"Done, read, and signed in open court on this the 9th day of October, 1915.

         "J. R. Land, District Judge."

Judgment affirmed at appellant's cost.

O'NIELL, J., concurs in the decree.

———

(81. South. 318)

No. 21623.

CERNEGLIA v. FRATELLO.

(Feb. 3, 1919. Rehearing Denied March 31, 1919.)

*(Syllabus by Editorial Staff.)*

1. ASSAULT AND BATTERY ⊜⇒35 — AGGRESSION—EVIDENCE.

In an action for damages from an assault, evidence *held* to show that defendant started the difficulty so as to be responsible for resulting damages to plaintiff.

2. ASSAULT AND BATTERY ⊜⇒40—ASSAULT—AMOUNT.

Where defendant was the aggressor in an assault upon plaintiff, who received a broken ankle from which he suffered considerably, as well as other bruises and scratches on his face, a judgment would be rendered for plaintiff for $500, on reversal of a judgment rejecting his claim.

Appeal from Twenty-Third Judicial District Court, Parish of St. Mary; Thomas M. Milling, Judge.

Action by Sam Cerneglia, against Ben Fratello with reconventional damages by defendant. From a verdict rejecting the damages of both parties and a judgment thereon, plaintiff appeals. Reversed, and judgment rendered for plaintiff for $500.

Emmet Alpha, of Franklin, and W. K. Wilson, of Patterson, for appellant.

Foster, Boatner & Foster, of Franklin, for appellee.

DAWKINS, J. This is an action sounding in damages, alleged to have grown out of a personal encounter between plaintiff and defendant.

The defendant admits the difficulty, but pleads self-defense, and makes a reconventional demand for damages on account of false arrest.

The case was tried before a jury and resulted in a verdict rejecting the demands of both parties. Judgment was signed in accordance with said verdict, and plaintiff has appealed.

### Opinion.

The issue involved here is almost solely one of fact. Plaintiff swears that the difficulty arose under the following circumstances, to wit:

That on May 16, 1914, he had started out with his fruit and vegetable wagon to cover his usual route of trade, and had stopped his wagon in front of the house of a Mrs. Rentrop and, with his basket of fruit on his shoulder, was in the act of going into her gate, when he was hailed by defendant; that just a few moments prior thereto he had passed defendant on the main street in the town of Patterson, La., each traveling in his own wagon and in opposite directions; that, when he was called by the defendant, he turned around and walked back a few feet in the direction from which defendant was coming, plaintiff still having his basket of fruit on his shoulder, and, when they met, they saluted each other in the usual manner; that defendant immediate-

ly demanded to know why be (plaintiff) had reported defendant for selling fish outside of the corporate limits of Patterson without a license; that he denied this, and defendant ·immediately struck him with his fist, knocking him down in the gutter and got on top of plaintiff and commenced to pestle him with his fist; that defendant's young son also got out of the wagon and started to beat plaintiff over the head with a stick or piece of iron, and that they only desisted after several calls from a colored man by the name of Donnell and after he had informed them that Mr. Picou, the constable, was coming; that in his fall his ankle was broken, several bruises and lacerations were inflicted on his face by defendant and his son; and that he was laid up for several months on account of the injuries received. He is corroborated in practically all of these statements by two colored men named Donnell and Roberson, respectively, with the exception that neither of them actually saw the beginning of the encounter. Donnell says he was mowing a lawn a short distance away, heard the parties talking, and, when he looked around, he saw plaintiff's hands go up as he fell in the ditch; that defendant's son did get out of the wagon and was proceeding to strike plaintiff with a stick or some·other object, while defendant was on top ,of him and beating him with his fist; that he called to defendant and his son to stop two or three times, and, when they failed to do so, he walked down to the gate and out to where the difficulty was taking place and shouted that Mr. Picou, the constable, was coming; that defendant then got off of plaintiff, his son put whatever it was that he had been using back in the wagon, defendant ran off up the street, and the boy got in the wagon and drove off. Roberson was some distance away and did not go to the place where the difficulty had occurred until defendant had left. However, he

states that he saw defendant. and his son beating plaintiff, and that they got up and left shortly after Donnell had announced that the constable ,was coming.

Defendant admits that he stopped his wagon on the morning of the difficulty, got out, and walked back in the direction of plaintiff, and called to the latter with the statement that he wanted to see him; that they spoke in the usual manner, and he then asked plaintiff why he had reported him to the officers; that plaintiff denied this and began cursing both defendant and the officers from whom the information was obtained; that at the same moment plaintiff put ·his basket down on his leg and hit defendant in the face with his fist; that they then clinched, and in the tussle fell in the ditch, where they fought for some little time with first one and then the other on top, until the negro Donnell called to them to stop; that he got up and proceeded up the street in a fast walk, because he saw the brother-in-law of plaintiff coming and was afraid that the two together would kill him. He denies that his son participated in the difficulty at all. Defendant's son, who was a lad about 11 years old, testifies, in substance, to about the same state of facts.

These were the only eyewitnesses to the actual difficulty, except that a Mr. David Peterson, who was standing some 250 feet away, says that he saw the two wagons stop, and that defendant got out and walked back in the direction where plaintiff was standing. However, his view of what took place thereafter was cut off by plaintiff's wagon, which stood between him and the place where the difficulty occurred; and that he did not feel sufficiently interested to go down there and, after seeing defendant walk hurriedly up the street, he (Peterson) went back in his house.

Plaintiff's basket and its contents were found scattered. in the street, and this with

other circumstances disclosed by the record, independent of the testimony of the witnesses, would indicate that he had the basket on his shoulder, or at least in his hand, at the time the trouble started. His ankle was broken, and he had to be placed in his wagon and taken to the hospital for surgical attention. Defendant left the scene of the fight and remained in hiding during the balance of the day, until about 5 o'clock in the afternoon, when he communicated with the town marshal and arranged to give himself up. Witnesses by whom he was seen immediately after the difficulty say that he had no evidences of injuries on his person, nor any dirt or other indications on his clothes that he had wallowed in the street, as detailed in his testimony. However, other witnesses say that he did have scratches on his face and a bruised lip.

[1, 2] We, of course, do not know upon what theory the jury decided the case, or to what extent local influence and knowledge of the parties may have operated. It is suggested by counsel for plaintiff in their brief that inasmuch as both parties were Italians, and this was only a fight between two persons of the same nationality, the jury decided to "call it even" and leave the parties where they had found them. However, the question of legal liability must turn very much upon the same principles as would apply in a criminal charge, growing out of the same circumstances, against either party. The main question, therefore, in the first place, is: Who was probably the aggressor? In view of the known tendencies of the Italian nature we are very much inclined to the idea that inasmuch as defendant was doubtless smarting under the knowledge that he had been charged by plaintiff with violating the law, and was the one who started the discussion by stopping the plaintiff and demanding to know why he had been so reported, he very probably opened the contro-versy with the determination of getting some sort of satisfaction on that account. Of course, we must consider the interest which both the plaintiff and the defendant, as well as the little son of the latter, had in the outcome of the litigation in giving their testimony, and the extent to which either side is corroborated by other evidence. We think that plaintiff's version of the matter is the logical one, and the one which is corroborated by the testimony of the other eyewitnesses, as well as the physical circumstances. Much of the testimony of defendant and his son is directly contradicted by the statements of the other disinterested witnesses who saw what took place. Besides, the subsequent conduct of defendant, both in hiding out and seeking to cover up his property for the purpose of escaping whatever judgment might be obtained against him, tends to indicate a consciousness of having been in the wrong. We also think it probable that, while the testimony with reference to defendant's good character was excluded by the court, the full benefit thereof, as to the jury, was had from the manner in which this matter was persistently urged by the counsel for defendant, and especially in stating in the presence of the jury, each time when the witnesses were on the stand, the particular facts which it was desired to prove.

We therefore conclude that defendant started the difficulty and is responsible for whatever damages were suffered by the plaintiff as a result thereof. It is undisputed that plaintiff received a broken ankle, from which he suffered considerably thereafter, as well as other bruises and scratches on his face, and that, in view of all the circumstances, a judgment for the sum of $500 would work substantial justice between the parties.

It is therefore ordered, adjudged, and decreed that the judgment appealed from be, and the same is hereby, annulled and reversed, and that the plaintiff do now have

and recover of the defendant the sum of $500 with legal interest from judicial demand. Defendant to pay the costs of both courts.